IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE: : CASE NO. 09-05928
:
ABRAHAM PETROLEUM :
CORPORATION : CHAPTER 11
:
Debtor :
FILED & ENTERED ON 06/28/2012
:

OPINION AND ORDER

This case is before the court upon the motion requesting reconsideration of this Court's Order granting Debtor's request for the cancellation of certain post-petition tax statements (Docket No. 439) filed by the Municipal Revenue Collection Center's (hereinafter referred to as "CRIM") on April 17, 2012 (Docket No. 442) under Fed. R. Civ. P. 60(b)(1) and (6), made applicable through Fed. R. Bankr. P. 9024. On April 19, 2012, the Court granted CRIM five (5) days to file a legal memorandum to substantiate its motion for reconsideration (Docket No. 443) and on April 24, 2012, CRIM filed its legal memorandum (Docket No. 447). On May 15, 2012, Debtor filed its answer to CRIM's legal memorandum (Docket No. 448). For the reasons stated below the motion for reconsideration is hereby denied.

*Fed. R. Civ. P. 59(e)*

A motion for reconsideration of an order or judgment is not recognized by the Federal Rules of Civil Procedure. In re Pabon Rodriguez, 233 B.R. 212, 218 (Bankr. D.P.R. 1999) *aff'd*, 2001 WL 958803 (1st Cir. 2001) (citing Vank Skiver v. United States 952 F.2d 1241, 1243 (10th Cir. 1991)). Federal courts treat such a motion as either a motion to alter or amend judgment under Fed. R. Civ. P 59(e) or a motion for relief of judgment under Fed. R. Civ. P. 60(b). "These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies depends essentially on the time a motion is served. If a motion is served within fourteen (14) days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b)." Id. In the instant case CRIM's motion for reconsideration was filed one (1) day after the Order for which reconsideration is sought was entered. Therefore, the

motion will be treated as one filed under Fed. R. Civ. P. 59(e) made applicable here through Fed. R. Bank. P. 9023 even though CRIM's motion for reconsideration was under Fed. R. Civ. P. 60(b)(1) and (6) made applicable through Fed. R. Bankr. P. 9024. CRIM's Fed. R. Bankr. P. 9024 motion for reconsideration was based upon Fed. R. Civ. P. 60(b)(1) or (6); namely, mistake, inadvertence, surprise, or excusable neglect; or any other reason that justifies relief.

Fed. R. Civ. P. 59(e) authorizes the filing of a written motion to alter or amend a judgment after its entry. The motion must demonstrate the "reason why the court should reconsider its prior decision" and "must set forth facts or law of a strongly convincing nature" to induce the court to reverse its earlier decision. Pabon Rodriguez, 233 B.R. at 218 (citations omitted). The movant "must either clearly establish a manifest error of law or must present newly discovered evidence". Id. The party cannot use a Rule 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court. Id. Generally, when a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce that evidence to support a Rule 59(e) motion. Id. Neither can the party use this motion to raise novel legal theories that it had the ability to address in first instance. Id. The federal courts have consistently stated that a motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources. Id. In practice, Fed. R. Civ. P. 59(e) motions are typically denied because of the narrow purposes for which they are intended. Id.

*CRIM's Arguments & Discussion*

CRIM in its Motion Requesting Leave to File Motion in Lieu of Oral Argument (Docket No. 440) informs the court that it was not aware of the April 13, 2012 hearing (which was scheduled to consider Debtor's motion for an order directing the cancellation of tax statements by CRIM) (Docket No. 429), given that prior to the filing of said motion, the attorney for the CRIM had not made a written appearance in this case, and thus CRIM was not notified through the PACER system of the April 13, 2012 hearing to consider Debtor's motion requesting entry of Order Directing the Cancellation of Tax Statements by CRIM (Docket No. 426). CRIM further explained that from

2

Thursday, April 5, 2012 to Sunday, April 8, 2012 its offices were closed due to Holy Week/Easter weekend and thus, CRIM's attorney did not have access to her office e-mail. Also, CRIM was not notified by BNC of the April 13, 2012 hearing (Docket No. 433). Moreover, CRIM informs the court that it received the Amended Certificate of Service by Debtor's attorney (Docket No. 435) on April 13, 2012 at 11:23am and was hand delivered to the CRIM's attorney that same day later in the afternoon. Notwithstanding, this Court on April 19, 2012, granted CRIM five (5) days to file a legal memorandum in support of its motion for reconsideration. The court also clarifies that this Order did not constitute the grating of CRIM's motion for reconsideration as the latter stated in its motion in compliance with Order dated April 19, 2012 ("Since this Honorable Court issued an Order on 17 April 2012 granting Debtor's request, we filed a Motion Requesting Reconsideration of Order dated 19 April 2012 and directed us to submit a legal memorandum in support of our motion for reconsideration within five days," Docket No. 447, pg. 1).

CRIM's presents three (3) legal arguments as to why the court should reconsider the Order rendered by this court granting the cancellation of the CRIM's post-petition tax statements of real properties. CRIM first argues that the post-petition real property taxes in controversy for fiscal years 2010, 2011 and 2012 constitute administrative expenses which were addressed in Article II, paragraph 2.2 of Debtor's Plan of Reorganization which stated that the same would be paid upon the plan's Effective Date. CRIM further argues that pursuant to 11 U.S.C. §503(b)(1)(D), the requirement to file a request for payment of an administrative expense pursuant to 11 U.S.C. §503(b)(1)(B) and (C) does not apply to tax claims of a governmental unit as a condition to having an allowed administrative expense (Docket No. 447). CRIM's second argument is that these post-petition property taxes constitute the first lien (statutory lien) on the real estate properties and thus have priority over any other liens on said properties in conformity with the Puerto Rico Mortgage Act, 30 L.P.R.A. §2651[1],

---

[1] Section 2651 of the Puerto Rico Mortgage Law provides; "[a] statutory mortgage is constituted in favor of the Commonwealth of Puerto Rico, the Center for Collection of Municipal Incomes of the Commonwealth of Puerto Rico, and its corresponding municipalities on the taxpayers' property for land taxes pertaining to the last five annual assessments and for current unpaid taxes encumbering it. This statutory mortgage is implicit and specifies a preference in favor of its titleholders above all other creditors and over the third acquirer, even though he may have

and thus may not be cancelled by the Plan and pursuant to 11 U.S.C. §1141(c), since the same does not refer to "claims against or interests in property" as does 11 U.S.C. §363(f), which allows for the sale "free and clear of any interest in such property." CRIM's third argument is that since Debtor's plan is essentially a liquidation plan, Debtor is not entitled to a discharge pursuant to 11 U.S.C. §1141(d)(3) which is a corollary provision to 11 U.S.C. §727(a). Thus, "...Debtor is moving the Court to eliminate property taxes on the real properties to, in effect, grant a discharge for taxes which are a statutory lien and administrative expenses" (Docket No. 447, pg. 8).

CRIM's first argument regarding the administrative priority of the post-petition taxes in controversy is contradictory.  The CRIM argues that pursuant to 11 U.S.C. §503(b)(1)(D) it did not have to file a request for payment of an administrative expense since it is a governmental unit. However, the CRIM also argues that the post-petition real property taxes in controversy for fiscal years 2010, 2011 and 2012 were addressed in Article II, paragraph 2.2 of Debtor's Plan of Reorganization which stated that the administrative claims would be paid upon the plan's Effective Date. Debtor's Plan of Reorganization in Article II, section 2.2  provides the following for administrative expense claims:

"(a) General.  Except as otherwise agreed to by Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the Effective Date.

If Debtor disputes any portion of an Administrative Expense Claim, Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim." (Docket No. 319, pgs. 10-11).

Debtor's Plan of Reorganization defines the term Administrative Claim as,

"... a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including without limitation:
(a) fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code, and
(b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930." (Docket No. 319, pg. 2)

Debtor's Reorganization Plan defines the term "Allowed" as;

recorded his right." 30 L.P.R.A. §2651.

"(a) a Claim that has been listed by the Debtor in its Schedules, as amended, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;
(b) a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Oder;
(c) a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502(h) of the Bankruptcy Code; or
(d) any Claim expressly Allowed under the Plan or pursuant to the Confirmation Order."
(Docket No. 319, pgs. 2-3).

The Debtor's Reorganization Plan only provides for the payment of allowed administrative claims which are detailed in Exhibit D of Debtor's Disclosure Statement, and does not include the post-petition property taxes in controversy (Docket N0. 318).

CRIM also argues that under Section 503(b)(1)(D) it did not have to file a request for payment of an administrative expense. Section 503(b)(1)(D) places the burden on the trustee or the debtor to ascertain whether there are any administrative expense taxes and to have the amount of such taxes determined. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶503.02[3] (16th ed. 2012). However, even though  CRIM does not have the burden to request administrative payment of the post-petition property taxes pursuant to 11 U.S.C. §503(b)(1)(D) it failed to object to the Debtor's Disclosure Statement and/or Plan of Reorganization which did not provide for the payment of the post-petition real estate property taxes in controversy. Thus, CRIM's failure to object to Debtor's plan of reorganization was fatal since the confirmation of a plan operates as a final judgment which precludes all questions regarding the treatment of creditors under the plan, discharge of liabilities, or dispositions of property that could have been raised which pertain to a confirmed plan. Moreover, the Order confirming Debtor's Plan of Reorganization specifically provided;

"[u]nder the provisions of 11 U.S.C. §1141(a), subject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan is binding upon every entity that holds a claim against the debtor, notwithstanding the holder not been scheduled, not having filed a claim or not receiving any distribution under the plan. Consequently, a confirmed plan precludes parties from raising claims or issues that could have or should have been raised before confirmation but were not. [Alan N. Resnick & Henry J. Sommer,] 8 Collier on Bankruptcy ¶1141.02 (16th ed.); See Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (2009);[First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters. Inc.), 81 F. 3d. 1310, 1315 (4th Cir. 1986).

A final order of confirmation terminates all rights of holders of claims and interests except

5

as otherwise provided for in the plan or the order confirming the plan. *Collier on Bankruptcy, id.*

Conformation of a plan operates as a final judgment. All questions that could have been raised that pertain to a confirmed plan are barred by the doctrine of *res judicata*. Under the doctrine questions concerning the treatment of any creditor under the plan, discharge of liabilities, or dispositions of property may no longer be raised after plan confirmation. These issues must be raised in the context of objections to confirmation of the plan. *Collier op. Cit.* §1141.02[04]. *In re Varat, supra.*" (Docket No. 439, Order, pg. 2).

CRIM's failure to object to Debtor's plan of reorganization is closely related to the four (4) requirements under 11 U.S.C. §1141(c) that must be satisfied for a debtor to be able to avoid/extinguish liens on or other direct interests in property. This court in the April 17, 2012 concluded that Debtor had satisfied all four (4) requirements for CRIM's statutory liens to be extinguished under 11 U.S.C. §1141(c). The court after explaining in detail how the Debtor satisfied the four factors concluded as follows;

"*Ahern* establishes the following four (4) conditions for the disposition of a lien:
1. That the plan be confirmed, as in this case.
2. That the property that is subject to the lien be dealt with by the plan, as in the Plan.
3. The participation of the lien holder in the reorganization process. All that is required by Ahern's participation standard is sufficient notice to satisfy the requirements of due process. Not only was CRIM notified of Debtor's Chapter 11 proceedings through the matrix address list to PO Box 195387, San Juan, PR 00919-5387, the same address of its proof of claim, but as stated above CRIM participated in Debtor's reorganization process.
4. The plan must not preserve the contested lien, as the Plan does not.
*Ahern's* four (4) conditios are met in this case." (Docket No. 439, pg. 4).

Moreover, the CRIM in its motion for reconsideration did not present arguments questioning the court's application of these four (4) factors to the instant case.

CRIM's second argument is that the post-petition taxes which constitute a statutory lien and have priority over any other liens on said properties pursuant to the Puerto Rico Mortgage Act, 30 L.P.R.A. §2651 may not be cancelled by the Plan and pursuant to Section 1141(c) because the language of this particular section does not refer to "claims against or interests in property" as does 11 U.S.C. §363(f), which allows for the sale "free and clear of any interest in such property. The court finds that this argument is misplaced. This issue was specifically explained in this court's Order. Regarding this particular issue the court in its Order stated the following:

"Section 1141(c) has been read as the provision that permits a plan to extinguish liens or other direct interests in property adopting the definitions of lien in Section 101(37) of the

Bankruptcy Code to 'mean charge against or interest in property.' The 'default rule' is that Section 114[1](c) extinguishes liens, since they are 'interests,' unless the bankruptcy plan otherwise preserves them. [Elixir Indus. v. City Bank & Trust Co. (In re Ahern Enterprises), 50[7] F. 3d. 81[7], 821-822 (5th Cir. 2007); In re Penrod, 50 F. 3d 459, 463 (7th Cir. 199[5]); In re S. White Transportation, Inc., 455 B.R. 509 (Bankr. S. D. Miss. 2011); In re Worldcom, [Inc.], 382 B.R. 610 (Bankr. S.D. N.Y. 2008); Dever v. IRS (In re Dever), 164 B.R. 132 (Bankr. C.D. Cal. 1994).

As a general matter, a reorganization plan's provision that vests the property of the estate in the debtor 'free and clear" of all liens will void all liens unless the lien was expressly preserved in the plan. In re Ahern Enterprises, 507 F. 3d. at 821; [FDIC v. Union Entities] (In re Be-Mac Transport Co.), 83 F. 3d 1020, 1025 (8th Cir. 1996) (noting the rule that 'a secured creditor who participates in the reorganization may also lose its lien by confirmation of a reorganization plan which does not expressly preserve the lien.'); In re Penrod, 50 F. 3d. at 443 (holding that section 1141(c) covers liens and 'that unless the plan of reorganization, or the order confirming the plan, says that a lien is preserved, it is extinguished by the confirmation.'") (Docket No. 439, Order, pgs. 2-3).

The court also finds that CRIM's second argument is taken out of context since the same regards 11 U.S.C. §1141(d)(2) and (3) which particularly provide for the exceptions to the debtor's *in personam* discharge and the concept of "successor liability." The passage from Collier on Bankruptcy reads in its entirety;

"Section 1141(c) may also be read as effecting an *in rem* discharge of property of the estate that parallels the debtor's *in personam* discharge under section 1141(d). Such a reading is supported by two textual elements of section 1141(c). First, the section begins with 'Except as provided in subsections (d)(2) and (d)(3) of this section...' Those subsections deal with exceptions to the debtor's *in personam* discharge. It makes sense that an *in rem* discharge of the property would equally be subject to the same exceptions as the discharge of the debtor personally. Second, section 1141(c) does not refer to 'claims against or interests in property' as does, for example, section 363(f), which permits sale 'free and clear of any interest in such property.' Rather, it refers to 'free and clear of all claims and interests of creditors, equity security holders and of general partners in the debtor.' A reference to 'claims' of creditors and to 'interests' of equity holders is suggestive of a discharge concept, that the claims and interests may not be asserted against the property after confirmation, and creditors and equity holders may not pursue the property, whether or not they had liens on the property, and whether or not retained by the reorganized debtor or transferred to a third party. Such a reading provides substantial support for protection of an entity, including the reorganized debtor, acquiring property under the plan from any successor liability, addressed in the next section."Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1141.04[1] (16th Ed. 2012).

Lastly, CRIM's third argument is that Debtor is not entitled to a discharge pursuant to 11 U.S.C. §1141(d)(3) because its has a liquidation plan and thus, "...Debtor is not moving the Court to eliminate property taxes on the real properties to, in effect, grant a discharge for taxes which are a statutory lien and administrative expenses." CRIM is basically arguing that given that Debtor has a liquidation plan it is unable to extinguish the post-petition tax liens in controversy under Section

7

1141(c) because under Section 1141(d)(3) it is unable to obtain a discharge.

This court on August 2, 2011 granted the Order Confirming the Plan whereby paragraph A of the same stated that pursuant to Section 1141(d) of the Bankruptcy Code, confirmation of the Plan, as in the instant case, "[d]oes not discharge a debtor if (i) the Plan provides the liquidation of all or substantially all of the property of the estate; (ii) the debtor does not engage on business after consummation of the Plan; (ii) the debtor would be denied a discharge under section 727(a) of the Bankruptcy Code if the case were a case under chapter 7." (Docket No. 372, pg. 1). However, Section 1141(d)(3) provides for *in personam* discharge of the debtor, meaning that the claims against the Debtor are not dischargeable which means that creditors with claims may initiate collection actions against the Debtor once the plan of reorganization has been confirmed.

Conclusion

For the reasons stated above, this court holds that the CRIM has not established a manifest error of law nor presented newly discovered evidence in its motion for reconsideration which would warrant this court to reconsider its order entered on April 17, 2012, granting Debtor's motion for an Order directing the cancellation of tax statements. Therefore, the motion for reconsideration is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 27th day of June 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge